**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAJAN KURIAN AND MICHAEL RHODES, individually and on behalf of a class of others similarly situated, | **AMENDED COMPLAINT - CLASS ACTION** |
| Plaintiffs, | |
| v. | |
| THE COUNTY OF LANCASTER, THE LANCASTER COUNTY PRISON BOARD, and JOHN DOES 1 - 20, | **No. 2:07-cv-03482-PD** |
| Defendants. | |
| | **Jury Trial Demanded** |

## INTRODUCTION

This is a class action brought to redress the deprivation by Defendants of rights secured to the Plaintiffs and the proposed Class under the United States Constitution and the laws of the United States of America. The Lancaster County Prison Board, an agency of the County of Lancaster, has a uniform practice and procedure of strip-searching all individuals who enter the Lancaster County Prison and are placed in prison clothing, regardless of the crime or violation for which they are detained. Upon information and belief, this uniform practice and procedure is, in part, derived from the written procedures of the Lancaster County Prison Board, and was promulgated by senior Board members.

It is well established that individuals charged with misdemeanors, summary violations, or other similar charges and/or crimes cannot be strip searched upon entry or transfer to the Lancaster County Prison absent particularized suspicion that those detainees possess weapons or contraband. In short, the uniform practice and procedure of Lancaster County and the Lancaster County Prison Board to force those charged with such crimes to undergo the indignities of a strip search upon transfer and/or entry into the Lancaster County Prison is not only clearly illegal, but is insensitive, unnecessary, and offensive.  What is particularly troubling is that Defendants have continued to engage in this misconduct notwithstanding an overwhelming number of cases, within this Circuit and others, that have squarely declared these practices to be unlawful and unconstitutional.

Plaintiffs bring this action on behalf of themselves and a class of thousands of others who were unconstitutionally strip searched to vindicate the clear and unnecessary violations of their civil rights. Plaintiffs were each charged with non-felony offenses and were subjected to a strip search in violation of their rights against unreasonable searches guaranteed by the Fourth Amendment of the United States Constitution, which is made applicable to the states by the Fourteenth Amendment. Plaintiffs seek monetary damages for themselves and on behalf of the proposed class, a declaration that the Defendants' uniform practices and procedures are unconstitutional, and an injunction preventing Lancaster County and the Lancaster County Prison Board

from continuing to violate the rights of those placed into their custody. With
this as a background, Plaintiffs complain as follows:

## JURISDICTION

1.      This Court has jurisdiction over this action under the provisions of
28 U.S.C. § 1331, 1341 and 1343 because it is filed to obtain compensatory
damages, punitive damages, and injunctive relief for the deprivation, under
color of state law, of the rights of citizens of the United States secured by the
Constitution and federal law pursuant to 42 U.S.C. § 1981 and 1983. This Court
also has jurisdiction over this action under the provisions of 28 U.S.C. § 2201,
as it is filed to obtain declaratory relief relative to the constitutionality of the
policies of a local government.

2.      Venue is proper under 28 U.S.C. § 1391(e)(2) because the events
giving rise to Plaintiffs' claims and those of proposed class members occurred
in this judicial district.

## PARTIES

3.      Plaintiff Sajan Kurian ("Kurian") is an adult male individual who
resides in Forney, Texas. On or about Tuesday, April 11th, 2006, Kurian was
arrested and placed in the Lancaster County Prison for a technical violation of
parole for a driving while intoxicated arrest in York County.

4.      Plaintiff Michael Rhodes ("Rhodes") is an adult male who resides in
Lancaster, Pennsylvania.  Rhodes was detained at LCP on two separate

occasions for non-drug related, non-weapons related, and non-violent offenses, and on both occasions was subject to an unconstitutional strip search.

5.    Unless otherwise stated, Kurian and Rhodes shall be collectively referred to herein as "Plaintiffs."

6.    Defendant County of Lancaster (the "County") is a county government organized and existing under the laws of the Commonwealth of Pennsylvania.  The County can be served at 50 North Duke Street in Lancaster, Pennsylvania. At all times relevant hereto, the County, acting through its Prison Board, was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the Lancaster County Prison and was responsible for the appointment, training, supervision and conduct of all Prison Board personnel, including those working in the Lancaster County Prison. In addition, at all relevant times, the County was responsible for enforcing the rules of the Lancaster County Prison, and for ensuring that Prison Board personnel employed in the Prison obey the Constitution and laws of the United States and of the Commonwealth of Pennsylvania.

7.    The Lancaster County Prison Board (the "Prison Board") is an entity organized and existing under the laws of the Commonwealth of Pennsylvania, and can be served at the Lancaster County Courthouse, 50 North Duke Street, Room 502, Lancaster, Pennsylvania PA 17602. At all times relevant hereto, the Prison Board was responsible for operating, organizing, overseeing and administering the Lancaster County Prison (the "Prison"). At all times relevant hereto, Defendant Prison Board, together with the County of Lancaster, was

responsible for the polices, practices, supervision, implementation and conduct of all matters pertaining to the Prison, and was responsible for the appointment, training, supervision and conduct of all Prison Board personnel, including those working in the Prison. In addition, at all times relevant hereto, Defendant Prison Board, together with the County of Lancaster, was responsible for enforcing the rules of the Prison, and for ensuring that Prison Board personnel employed in the Prison obeyed the Constitution and laws of the United States and of the Commonwealth of Pennsylvania.

8.     Various other persons (including without limitation, Corrections Officers) and governmental agencies or entities (collectively the "John Doe Defendants"), the identities of which are presently unknown, have participated as co-conspirators with Defendants in the violations alleged herein and have performed acts in furtherance thereof.  The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives.

9.     Collectively, the County of Lancaster, the Lancaster County Prison Board, and the John Doe Defendants shall be referred to herein as "Defendants."

<u>CLASS ACTION ALLEGATIONS</u>

10.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals who were detained for misdemeanors,

summary offenses, violations of probation or parole, traffic infractions, civil commitments, or other similar charges and/or crimes and were strip searched upon their transfer and/or entry into the Lancaster County Prison (the "Class").

11.    The Class that Plaintiffs seek to represent is defined as follows:

> All persons who have been or will be placed into the custody of the Lancaster County Prison after being detained for misdemeanors, summary offenses, violations of probation or parole, traffic infractions, civil commitments, or other similar charges and/or crimes and were or will be strip searched upon their transfer and/or entry into the Lancaster County Prison pursuant to the policy, custom and practice of the Lancaster County Prison Board and the County of Lancaster. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

12.    This action has been brought and may properly be maintained as a class action pursuant to the Federal Rules of Civil Procedure, as Plaintiffs and the Class satisfy the numerosity, commonality, typicality and adequacy requirements for maintaining a class action under FED. R. CIV. P. 23(a).

13.    The number of members in the Class is so numerous as to render joinder impracticable. Upon information and belief, there are hundreds of people detained for misdemeanors and other violations who are placed into the custody of the Prison every month - all of whom are members of the proposed Class. Upon information and belief, the size of the proposed Class totals at least 5,000 individuals, some of whom have had their civil rights violated on multiple occasions.  Upon information and belief, the precise size of the Class

can be readily determined from documents and records maintained by Defendants.

14.     Upon information and belief, joinder of all of these individuals is impracticable because of the large number of Class members and the fact that Class members are likely dispersed over a large geographical area, with some members presently residing outside of Lancaster County and the geographic area served by this Judicial District.  Furthermore, upon information and belief, many members of the Class are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights on an individual basis.

15.     Common questions of law and fact exist as to all members of the Class, in that they each possessed the right to be free from unreasonable searches, and each were victims of Defendants' blanket policy of conducting strip searches absent individualized particularized suspicion, as required by law.  All members of the Class were detained for misdemeanors, summary offenses, violations of probation or parole, traffic infractions, civil commitments, or other similar charges and/or crimes when placed into the custody of the Prison, and all were illegally strip searched in violation of well established law.

16.     Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and all members of the Class were injured as a result of Defendants' illegal conduct. The harms suffered by the Plaintiffs are typical of the harms suffered by the Class members.

17.    Both of the representative Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. Neither Plaintiff has interests that are adverse to, or in conflict with, the interests of the members of the Class.

18.    Plaintiffs have retained counsel who have substantial experience and success in the prosecution of class actions and in civil rights litigation. In short, Plaintiffs' counsel has the resources, expertise and experience to successfully prosecute this action against Lancaster County and the Lancaster County Prison Board, and intends to prosecute this action vigorously. Counsel for the Plaintiffs know of no conflicts among members of the Class or between counsel and members of the Class.

19.    This action, in part, seeks declaratory and injunctive relief. As such, the Plaintiffs seek class certification under FED. R. CIV. P. 23(b)(2), in that all Class members were subject to the same policy which required the illegal strip searches of individuals detained for misdemeanors, summary offenses, violations of probation or parole, traffic infractions, civil commitments, or other similar charges and/or crimes  and placed into the custody of the Prison. The County of Lancaster and the Lancaster County Prison Board acted on grounds generally applicable to all class members, thereby making appropriate final equitable relief with respect to the Class as a whole.

20.    In addition to certification under FED. R. CIV. P.  23(b)(2), Plaintiffs seek certification under FED. R. CIV. P.  23(b)(3).

21.     Common questions of law and fact exist as to all members of the Class, and predominate over any questions that affect only individual members of the Class. These common questions of law and fact include, without limitation, the common and predominate question of whether the Defendants' written and/or *de facto* policy of strip searching all individuals detained for misdemeanors, summary offenses, violations of probation or parole, traffic infractions, civil commitments, or other similar charges and/or crimes and committed to the Prison is a violation of, *inter alia*, the Fourth and Fourteenth Amendments to the United States Constitution, whether such a written and/or *defacto* policy existed during the class period, whether Plaintiffs and members of the Class are entitled to damages and/or equitable relief and, if so, the nature of this relief.

22.     A class action is the superior method for the fair and efficient adjudication of this controversy, since joinder of all of the individual members of the Class is impracticable given the large number of Class members and the fact that they are dispersed over a large geographical area. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the federal court system of adjudicating thousands of individual cases would be enormous. Individualized litigation would also magnify the delay and expense to all parties and the court system. By contrast, the maintenance of this action as a class action in this Court presents far fewer

management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the Class.

23.    Upon information and belief, there are no other actions pending to address the Defendants' flagrant violation of the civil rights of members of the Class.

24.    In the alternative to certification under FED. R. CIV. P. 23(b)(3), Plaintiffs also seek partial certification under FED. R. CIV. P. 23(c)(4), if appropriate.

## FACTS

### Facts Applicable to the Class Generally

25.    The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, prohibits state officials, such as the Defendants in this action and the Corrections Officers they supervise, from performing strip searches of arrestees who have been detained for misdemeanors, summary offenses, violations of probation or parole, traffic infractions, civil commitments, or other similar charges and/or crimes unless the corrections officer has reasonable suspicion to believe that the detainee is concealing a weapon or contraband.

26.    Upon information and belief, the Defendants have instituted a written and/or *de facto* policy, custom or practice of strip searching all individuals who enter the custody of the Lancaster County Prison and are placed into Prison clothing, regardless of the nature of their charged crime or

violation and without the presence of reasonable suspicion to believe that the individual was concealing a weapon or contraband.

27.    Upon information and belief, the Defendants have instituted a written and/or *de facto* policy, custom or practice of conducting visual body cavity searches (visual inspection of the vaginal and rectal cavities) on all individuals who enter the custody of the Lancaster County Prison, regardless of the individual characteristics or the nature of their charged crime or violation. For purposes of this Complaint, strip and visual cavity searches are collectively referred to as ("strip searches").

28.    The Defendants know – or should know - that they may not institute, enforce or permit enforcement of a policy or practice of conducting strip searches without particularized, reasonable suspicion. Upon information and belief, the Lancaster Prison's written policy was based on the policy promulgated by the Lancaster County Prison Board.

29.    The Defendants' written and/or *defacto* policy, practice and custom mandating wholesale strip searches of all misdemeanor and violation detainees has been promulgated, effectuated and/or enforced in bad faith and contrary to clearly established law and to the United States Constitution.

30.    Reasonable suspicion to conduct a strip search may only emanate from the particular circumstances antecedent to the search, such as the nature of the crime charged or violation, the particular characteristics of the arrestees, and/or the circumstances of the arrest.

31.     Upon information and belief, the Defendants have promulgated, implemented, enforced, and/or failed to rectify a written and/or *defacto* policy, practice or custom of uniformly strip searching all individuals placed into the custody of the Lancaster Prison and placed into Prison clothing without any requirement of reasonable suspicion, or indeed suspicion of any sort. This written and/or *de facto* policy made the strip searching of pre-trial detainees routine; neither the nature of the offense charged, the characteristics of the arrestee, nor the circumstances of a particular arrest were relevant to the enforcement of the policy, practice and custom of routine strip searches.

32.     Pursuant to this written and/or *defacto* policy, each member of the Class, including both of the named Plaintiffs, was the victim of a routine strip search upon their transfer and/or entry into the Lancaster County Prison. These searches were conducted without any inquiry into or establishment of reasonable suspicion, and in fact were not supported by any reasonable suspicion.  Strip searches are conducted for individuals arrested for, among other offenses, Driving While Intoxicated, Harassment, Trespassing, Failure to Pay Child Support, and violations of probation and parole for misdemeanor offenses; none of which signal the particularized reasonable suspicion that the detainee is concealing a weapon or contraband.

33.     As a direct and proximate result of the unlawful strip searches conducted pursuant to this written and/or *defacto* policy, the victims of the unlawful strip searches -- each member of the class, including the named

Plaintiffs -- has suffered or will suffer psychological pain, humiliation, and mental anguish.

34.    Upon information and belief, Defendants often – if not always – conduct the strip searches in the presence of other detainees, prison officials, and other personnel, thereby adding to the humiliation suffered by members of the Class.

### Facts Applicable to Plaintiff Kurian

35.    Plaintiff Sajan Kurian is an adult male. On or about Tuesday, April 11th, 2006, at approximately 4:30 p.m., he was detained at the offices of the Lancaster County Adult Probation & Parole Services on a technical violation for an arrest for the non-felony charge of Driving Under the Influence of Alcohol.

36.    At the time of his arrest, Kurian was on parole for Driving Under the Influence of Alcohol.

37.    Kurian's technical violation of parole was void of any reasonable suspicion that he harbored any weapons or contraband.

38.    Kurian was patted down by a sheriff at the offices of the Lancaster County Adult Probation & Parole Services before being transported on a bus to the Prison with additional males.

39.    When Kurian arrived at the prison with the other detainees, and before being seen by a judge, he was patted down once again by correctional officers.  Kurian was then sent through a metal detector.  Again, there was no indication that Kurian was in possession of contraband or weapons.

40.     Kurian and the other detainees were then instructed to enter a cell, one by one, where they were strip searched in clear view of the other individuals. Kurian was able to observe other individuals being strip searched while he was waiting for his turn to be searched.

41.     In connection with the strip search, Kurian was required to completely disrobe, lift up his testicles, bend over and cough, all so that he could be visually inspected by a correctional officer who used a flashlight to inspect Kurian's anal cavity.

42.     As a direct and proximate result of the unlawful strip-search conducted pursuant to County and Prison Board's policy, practice and custom, Kurian has suffered and continues to suffer psychological pain, humiliation, suffering and mental anguish.

## Facts Applicable to Plaintiff Rhodes

43.     Michael Rhodes went into the Lancaster County Prison on two separate occasions for non-drug related, non-weapons related, and non-violent offenses, and on both occasions was subject to an unconstitutional strip search.

44.     Rhodes first went into the Lancaster County Prison in 2005 pursuant to a bench warrant that was issued when he was unable to attend a scheduled domestic relations hearing because his truck broke down on the highway.  Rhodes was arrested at his house by two Lancaster sheriffs pursuant to the warrant approximately one week later.   Rhodes did not resist the arrest, which was void of any reasonable suspicion that he was harboring any

weapons, drugs, or contraband.  While arresting him at his house, the two officers performed a thorough pat down and removed items like his wallet, change, and other materials in his pockets.  The arresting officers also looked through his wallet.  No drugs, weapons, or other contraband were uncovered as a result of this pat down and search.  Rhodes was then handcuffed and put into a police car, in which he was taken to the Lancaster County Prison.

45.    Upon his arrival at the Lancaster County Prison, Rhodes was initially put into a room with approximately 10 to 12 other detainees.  The intake officers called out the names of approximately 7 to 8 of these detainees (including Rhodes), and ordered them to go into a small room.  Two male corrections officers also went into the room with them.  Once in the room, the 7 to 8 detainees were ordered by the corrections officer to strip naked.  Each of the detainees got completely naked, were told to turn around and cough, were inspected with a flashlight, and were told by the guards that if they did not comply they would be "thumped" (*i.e.,* physically hit).  During the strip search, each of the 7 to 8 detainees could see each others' naked bodies, and, while there were no women in the room, the female guards and inmates could peer into the room through a window as they walked by.  After the strip search, the detainees were handed prison clothes to put on, and their street clothes were put into a bag.   Rhodes was discharged from the Lancaster County Prison within a few days.

46.    Rhodes was again committed to the Lancaster County Prison during the Class Period in late 2006 for another bench warrant that was issued

when he did not appear at a domestic relations hearing.  Rhodes underwent a substantially similar experience this time.  Rhodes, along with the 4 to 5 other detainees in the initial intake room, were subject to an unconstitutional strip search in plain view of one another.  Rhodes' arrest and commitment to the Lancaster County Prison were void of any reasonable suspicion that he was harboring weapons, drugs, or contraband.   Rhodes was released from the Lancaster County Prison within a few days after his second visit to the facility. On neither occasion did Rhodes consent to a strip search, and there was no indication in either instance that he was harboring contraband or that reasonable suspicion otherwise existed to justify a strip search.

47.    As a direct and proximate result of the unlawful strip-search conducted pursuant to County and Prison Board's policy, practice and custom, Rhodes has suffered injuries.

## CAUSES OF ACTION

## COUNT I

## Violations of 42 U.S.C. §1983

## AGAINST ALL DEFENDANTS

48.    Plaintiffs incorporate by reference and realleges each and every allegation stated in the preceding paragraphs.

49.    The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects citizens from unreasonable searches by law enforcement officers, and prohibits officers from conducting strip searches of individuals detained for misdemeanors, summary

offenses, violations of probation or parole, traffic infractions, civil commitments, or other similar charges and/or crimes absent some particularized suspicion that the individual in question has either contraband or weapons.

50.     The actions of Defendants detailed above violated Plaintiffs' rights under the United States Constitution. Simply put, it was not objectively reasonable for Prison Officers to strip search Plaintiffs and Class members based on their arrests.  It was also not objectively reasonable for the Defendants to order/direct Lancaster County Corrections Officers to conduct such strip searches.

51.     These strip searches were conducted pursuant to the policy, custom or practice of the County of Lancaster and the Lancaster County Prison Board. As such, the County of Lancaster is directly liable for the damages of Plaintiffs and members of the Class.

52.     Upon information and belief, the Defendants are responsible for establishing the policies and procedures to be utilized in the operation of the Prison, and are responsible for the implementation of the strip search policy questioned in this lawsuit. As such, the Defendants are each responsible for the damages of the Plaintiffs and members of the Class.

53.     The Defendants knew that the Prison's strip search policy was illegal, and acted willfully, knowingly, and with specific intent to deprive Plaintiffs and members of the Class of their Constitutional rights.

54.     This conduct on the part of all Defendants represents a violation of 42 U.S.C. §1983, given that their unlawful actions were undertaken under color of state law.

55.     As a direct and proximate result of the unconstitutional acts described above, Plaintiffs and the members of the Class have suffered damages.

## COUNT II

### Demand for Declaratory Judgment

#### AGAINST ALL DEFENDNATS

56.     Plaintiffs incorporate by reference and realleges each and every allegation from the preceding paragraphs.

57.      The policy, custom and practice of the Lancaster County Prison Board and the County of Lancaster is clearly unconstitutional, in that these entities and individuals are directing/conducting the strip searches of all individuals placed into the Prison without any particularized suspicion that the individuals in question have either contraband or weapons.

58.     Plaintiffs and members of the Class request that this Court issue a declaratory judgment, and that it declare the strip search policy of the County of Lancaster and the Lancaster County Prison Board to be unconstitutional.

59.     Alternatively, Plaintiffs and members of the Class lack an adequate remedy at law.

60.     Plaintiffs and members of the Class would be irreparably injured absent an order from this Court declaring these practices unlawful and unconstitutional.

## COUNT III

### Demand for Preliminary and Permanent Injunction

### <u>AGAINST ALL DEFENDANTS</u>

61.     Plaintiffs incorporate by reference and realleges each and every allegation in the preceding paragraphs.

62.     The policy, custom and practice of the Lancaster County Prison Board and the County of Lancaster is clearly unconstitutional, in that these entities and individuals are directing/conducting the strip searches of all individuals placed into the Prison without any particularized suspicion that the individuals in question have either contraband or weapons.

63.     Upon information and belief, this policy is currently in place at the Prison, with new and/or prospective members of the Class being subjected to the harms that have already been inflicted upon the Plaintiffs.

64.     The continuing pattern of strip searching individuals detained for misdemeanors, summary offenses, violations of probation or parole, traffic infractions, civil commitments, or other similar charges and/or crimes will cause irreparable harm to the new and/or prospective members of the Class, an adequate remedy for which does not exist at law.

65.    Plaintiffs demand that the County of Lancaster and the Lancaster County Prison Board immediately desist from uniformly strip searching all individuals placed into the custody of the Prison absent any particularized suspicion that the individuals in question have either contraband or weapons, and seeks both a preliminary and permanent injunction from this Court ordering as much.

66.    Alternatively, Plaintiffs and members of the Class lack an adequate remedy at law.

67.    Plaintiffs and members of the Class would be irreparably injured absent an order from this Court declaring these practices unlawful and unconstitutional.

68.    Plaintiffs and members of the Class are reasonably likely to succeed the on merits of their underlying claim, thereby making the issuance of a preliminary injunction appropriate.

<u>**DEMAND FOR PUNITIVE DAMAGES**</u>

69.    The actions of the Defendants detailed herein are outrageous, in that they continue to propagate an illegal strip search policy in the face of numerous court decisions declaring such practices unlawful.

70.    It is clear that the Defendants have no respect for the civil rights of individual citizens or for the rule of law. Consequently, an award of punitive damages is necessary to punish the Defendants, and to send a message to them that the requirements of the United States Constitution indeed apply to government officials in Lancaster County.

## DEMAND FOR TRIAL BY JURY

71.    Plaintiffs and members of the Class hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Sajan Kurian and Michael Rhodes on behalf of themselves and on behalf of a Class of others similarly situated, request that this Court grant them the following relief:

A.    An order certifying this action as a class action pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and 23(b)(3);

B.    A judgment against all Defendants, jointly and severally on Plaintiffs' First Cause of Action detailed herein, awarding Compensatory Damages to Plaintiffs and each member of the proposed class in an amount to be determined by a Jury and/or the Court;

C.    A declaratory judgment against all Defendants declaring the County of Lancaster and the Lancaster County Prison Board's policy, practice and custom of strip and visual cavity searching all detainees entering the Prison, regardless of the crime charged or suspicion of contraband, to be unconstitutional and improper.

D.    A preliminary and permanent injunction enjoining Defendants from continuing to strip and visual cavity search individuals detained for misdemeanors, summary offenses, violations of probation or parole, traffic infractions, civil commitments, or other similar charges and/or crimes absent particularized, reasonable

suspicion that the arrestee subjected to the search is concealing weapons or other contraband.

E.     A monetary award for attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988 and other applicable fee shifting statutes and principals.

Dated: May 15, 2008

Respectfully submitted,

CHIMICLES & TIKELLIS LLP

By:     *//s// Joseph G. Sauder*
        Joseph G. Sauder (I.D. No. 82467)
        Benjamin F. Johns (I.D. No. 201373)
        One Haverford Centre
        361 West Lancaster Avenue
        Haverford, PA 19041
        Telephone: (610) 642-8500
        Facsimile: (610) 649-3633

        Christopher G. Hayes (I.D. No. 57253)
        LAW OFFICE OF CHRISTOPHER G. HAYES
        225 South  Church Street
        West Chester, PA  19382
        610-431-9505 (phone)
        610-431-1269 (fax)
        Electronic Mail:
        chris@chayeslaw.com

        David Rudovsky
        Jonathan H. Feinberg
        KAIRYS, RUDOVSKY, MESSING &
        FEINBERG LLP
        The Cast Iron Building
        718 Arch Street, Suite 501
        Philadelphia, PA 19106
        Office: 215-925-4400
        Fax: 215-925-5365

Daniel C. Levin (I.D. No. 80013)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Telephone:  215-592-1500
Telecopier:  215-592-4663
Electronic Mail:  dlevin@lfsblaw.com

**ATTORNEYS FOR PLAINTIFFS AND
PROPOSED CLASS**